IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

MICHAEL O. HALL                                                                                      PLAINTIFF

        v.                    Civil No. 2:11-CV-02138

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                                                       DEFENDANT

## MEMORANDUM OPINION

      Plaintiff, Michael O. Hall, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration ("Commissioner") denying his claims for disability insurance benefits ("DIB") and supplemental insurance benefits ("SSI") under Titles II and XVI of the Social Security Act. 42 U.S.C. §§ 423(3)(1)(A), 1382c(a)(3)(A)[hereinafter "the Act"]. In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

### I.     Procedural Background:

      Plaintiff protectively filed his applications for DIB and SSI on February 26, 2009, alleging an onset date of February 20, 2009, due to his hearing loss in left ear, reading disorder, and verbal apraxia, a speech disorder in which a person has trouble saying what he wants to say correctly and consistently. Tr. 12-13, 112-120. National Institute on Deafness and Other Communication Disorders, http://www.nidcd.nih.gov/health/voice/pages/apraxia.aspx (last visited June 5, 2012).

      From April 1, 1991 through June 20, 2003, Plaintiff received child disability benefits for his verbal apraxia. Tr. 202-204. The onset date was determined as April 1, 1991. *Id.* On July 9, 2001,

during a periodic review, an administrative law judge ("ALJ") determined Plaintiff was eligible to continue receiving benefits, holding that Plaintiff's impairments functionally equaled an unspecified listing. Tr. 202. On June 23, 2003, after Plaintiff reached age eighteen, an ALJ determined Plaintiff was capable of performing sedentary, unskilled work, and as a result, his benefits ceased. *Id.*

Plaintiff's most recent disability applications were denied at the initial and reconsideration levels. Tr. 67-74, 78-84. At Plaintiff's request, an administrative hearing was held on April 22, 2010. Tr. 24-62. Plaintiff was present at the hearing and was represented by counsel. *Id.* A vocational expert and Plaintiff's mother also testified at the hearing. *Id.* The ALJ rendered an unfavorable decision on August 4, 2010, finding Plaintiff was not disabled withing the meaning of the Act. as Plaintiff's impairments fail to meet or medically equals one of the listed impairments in the Appendix 1, Subpart P, Regulation No. 4." Tr. 10-18. The Appeals Council denied Plaintiff's Request for Review on June 22, 2011, thus making the ALJ's decision the final decision of the Commissioner. Tr. 1-3. Plaintiff filed this action on July 27, 2011, and is before the undersigned by the consent of the parties. ECF No. 1, 5. Both parties have filed appeal briefs, and the case is now ready for decision. ECF No. 11, 12.

**II.   <u>Evidence Presented</u>:**

At the time of the administrative hearing on April 22, 2010, Plaintiff testified that he was twenty-three years of age and had completed high school. Tr. 26. After completing high school in 2003, Plaintiff attempted to enroll at the University of Arkansas in Fort Smith, but was unable to successfully pass the enrollment test. Tr. 30. In 2005, Plaintiff spent a week at Arkansas Rehab School in Hot Springs. Tr. 30, 228. The record reflects that Plaintiff's past relevant work history consists solely of working for Wal-Mart as a sales associate from 2005 - 2009. Tr. 27-28, 34-42.

On February 20, 2009, Plaintiff was terminated by Wal-Mart after he had difficulties interacting with another co-worker. Tr. 27. Plaintiff has sought work through other retailers and temporary work agencies since his termination from Wal-Mart in 2009, but, as of the filing date, has not been hired. Tr. 28-30. Additionally, Plaintiff does not have a driver's license, and relies on his mother for transportation purposes. Tr. 32-33. Prior to graduation, Plaintiff participated on the high school football team. Tr. 232. Further, Plaintiff has remained friends with his "speech teacher from kindergarten" and they will go to dinner, the movies, or visit "about once a month." Tr. 52-53. Plaintiff's daily activities include watching television and playing online video games; attending church weekly with his mother, shopping in stores, and going to the movies with a friend on a monthly basis. Tr. 167, 170-171.

    The medical evidence shows that Plaintiff was diagnosed with verbal apraxia and did not began speaking until age seven, using an augmentative and alternative communication ("AAC") device and a sign book with pictures to express himself until fourth grade. Tr. 207. From kindergarten through twelfth grade, Plaintiff was under the care of a speech pathologist through the school district. Tr. 52. The record also indicates that Plaintiff received special education from the district. Tr. 203. Additionally, the record shows that Plaintiff has some hearing loss in his left ear, which began at age five after the eardrum ruptured, but this hearing loss is now mild and does not present any issue nor is it presently subject to medical treatment. Tr. 207, 224, 252. The record indicates that Plaintiff has a vision impairment, but it is corrected through glasses. Tr. 173.

    At 5'9" and 350 pounds, Plaintiff is obese. Tr. 200. On December 4, 2002, Plaintiff was diagnosed with scoliosis via x-ray, and the radiologist noted possible spondylosthesis grade I and probable spondylolsysis at L5. Tr. 235. Plaintiff followed-up with his primary care physician and

the back pain was resolved. *Id*. The record does not contain any evidence of medical complication from the obesity and no further substantiation of any back pain.

**III.     Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id.* "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider the evidence in the record that fairly detracts from that decision." *Id*. As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year, and must establish that the disability prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 247 F.3d 1211, 1217 (8thCir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c).

A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or medically equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)-(f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920 (2003). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhardt*, 390 F.3d 584, 590-591 (8th Cir. 2004).

**IV.    ALJ's Determination:**

At step one, the ALJ determined that the claimant had not engaged in substantial gainful activity since February 20, 2009, the alleged onset date. Tr. 12. At step two, the ALJ found that Plaintiff suffered from verbal apraxia and reading disorder, both of which were considered severe under the Act. *Id.* The ALJ further found that the hearing loss in the left hear was only mild and did not impact Plaintiff's ability to hear normal conversations, making it non-severe. *Id.* Additionally, the ALJ held that the obesity, although not alleged, is not substantiated in the record as having any limitations on Plaintiff's ability to perform basic work activities, and as such, was non-severe. Tr.

12-13. Likewise, Plaintiff did not allege a lumbar spine disorder despite the alleged scoliosis, possible spondylosthesis and probably spondylolysis, and the ALJ found a non-severe impairment as there was no indication in the record that his back impairment imposed any limitations on Plaintiff's ability to perform basic work activities. Tr. 13.

At step three, the ALJ determined that Plaintiff does not have a impairment or combination of impairments that meets or medically equals one of the listed impairments of the Act. Tr. 13. Specifically, the Plaintiff's speech disorder did not meet the listing in 2.09 as the evidence failed to show that Plaintiff is unable to produce, by any means, speech that can be heard, understood, or sustained. Tr. 13. Likewise, the ALJ determined that the mental impairment did not meet or medically equal the criteria of 12.02 under either paragraph B or C. *Id.* Under B, she found Plaintiff failed to establish: (1) he was restricted in his daily living; (2) he was unable to function with others outside the home; and (3) he had difficulties in concentration, persistence or pace as he "is able to watch TV, play video and computer games, follow written and oral instructions," and manage some of his own finances without any episodes of decompensation. *Id.* Under C, the ALJ found there was no evidence of decompensation, or residual disease process or inability to function outside a highly supportive arrangement, nor was the evidence that Plaintiff could not function independently outside of the home. Tr. 14.

At step four, the ALJ found that Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: no work requiring: (1) telephone usage; (2) fine communication skills, or (3) transactional interaction with the public. *Id.* After reviewing the entire record, the ALJ found that the Plaintiff's verbal apraxia and reading disorders are not severe enough to preclude work, relying on the fact that neither a

consultative language-speech pathologist nor a license psychological examiner concluded that Plaintiff was incapable of work. Tr. 15. Most notably, there was no evidence to show that his impairments have worsened in his adult life, and, moreover, Plaintiff worked four years with the impairments. *Id.*

With these limitations, the ALJ concluded Plaintiff could not perform his past relevant work as a sales associate. Tr. 16. However, after hearing vocational expert testimony, the ALJ found jobs existing in significant numbers in the national economy that Plaintiff could perform.[1] Accordingly, the ALJ determined Plaintiff was not under a disability from February 20, 2009, the alleged onset date, through April 22, 2010, the date of the decision. Tr. 17-18.

**V.    Discussion:**

On appeal, Plaintiff contends that the ALJ erred by: (1) failing to address all of the non-exertional limitations of the suggested RFCs; and (2) posing an improper hypothetical to the vocational expert ("VE"). *See* Pl.'s Br. 9-17. Defendant argues that substantial evidence of record shows: (1) the ALJ accounted for Plaintiff's limitations in her RFC assessment by focusing on his diagnosis and tailoring his RFC to reflect non-exertional limitations; (2) that the record was fully and fairly developed; and, (3) the ALJ is not required to include additional limitations that are not supported by the record. *See* Df.'s Br. 4-7. For the following reasons, the undersigned finds that substantial evidence supports the ALJ's decision.

---

[1] The ALJ determined Plaintiff could perform the requirements of occupations such as production worker, of which there are 6,300 jobs regionally and 300,000 nationally, maid/house cleaner, of which there are 3,000 regionally and 30,600 nationally, and poultry eviscerator, of which there are 3,500 regionally and 53,000 nationally. Tr. 17, 57-58.

**A.      RFC Determination:**

A disability claimant has the burden of establishing his RFC. *Eichelberger*, 390 F.3d at 591; *Masterson v. Barnhardt*, 363 F.l3d 731, 737 (8th Cir. 2004). A claimant's RFC is most he can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ determines a claimant's RFC based on "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Masterson*, 363 F.3d at 737. The Eighth Circuit has stated that "a claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Thus, although the ALJ bears the primary responsibility for determining a claimant's RFC, there must be "some medical evidence" to support the ALJ's determination. *Eichelberger*, 390 F.3d at 591; *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000). Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner. 20 C.F.R. § 416.927(e)(2), 416.949 (2006).

      1.      Physical Impairment:

Plaintiff does not contest the ALJ's finding that he has not established a physical impairment and is therefore able to perform work at all exertional levels. *See* Pl.'s Br. 12, Tr. 17. The undersigned holds substantial evidence supports the ALJ's physical RFC without objective evidence to the contrary.

      2.      Mental Impairment:

Plaintiff argues given his severe articulation disorder and the extent of his learning impairment, the RFC the ALJ adopted with non-exertional limitations was improper. *See* Pl.'s Br. 14-15. The ALJ correctly determined while Plaintiff established that the verbal apraxia and reading

disorder are limitations, he failed to establish that the limitations were severe enough to preclude all work; therefore, the undersigned holds the ALJ properly adopted an RFC to include non-exertional limitations based on the evidence presented.

In reaching her conclusion, the ALJ followed the two-step process outlined under the Act. First, she addressed the underlying medically determinable impairment that could reasonably be expected to produce Plaintiff's symptoms. Tr. 14. The ALJ weighed Plaintiff's testimony, the findings from the adult disability report, and Plaintiff's responses in the function report. *Id.* She determined Plaintiff could have limitations in communicating effectively, interacting with others, remembering, and concentrating, which sometimes causes difficulty with his ability to understand instructions. Tr. 15. Based on the evidence presented, the ALJ concluded that the intensity, persistence and limiting effects of Plaintiff's verbal apraxia and reading disorder were not credible to the extent they were inconsistent with the RFC assessment. *Id.* In reaching this decision, the ALJ relied on and gave due weight to Ms. L. Jane Barrett, a licensed speech-language pathologist. *Id.* Specifically, her consultative exam noted Plaintiff had a severe impairment in articulation, mild to moderate impairment in fluency, average receptive language skills and normal voice skills. Tr. 15-16. The report also recorded Plaintiff's speech is comprehensible to others 75% of the time, and he had a high level of language communication. Tr. 222. Additionally, the ALJ relied on Ms. Dena Baker, a licensed psychological examiner, and her psychological screening with neuropsychological testing to evaluate Plaintiff's eligibility for job placement. Tr. 15-16. Ms. Baker's report indicated Plaintiff's communication disorder may interfere with his ability to communicate effectively with others in the workplace, but she concluded Plaintiff has the ability to "perform skilled vocational activities if he is well motivated and receives accommodations." Tr. 15-16, 222. Particularly, the

ALJ noted that neither evaluator concluded that Plaintiff is unable to work. Tr.15.

Next, the ALJ noted Plaintiff was able to work full-time for four years with these impairments, including receiving annual raises and an increase in responsibilities before his termination, with only one disciplinary instance. Tr. 32, 41-43. Most telling, there was no evidence presented to indicate that his impairments have worsened[2] or that he is currently receiving treatment for his verbal apraxia and reading disorder. *Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (absence of objective medical evidence to support claimant's complaints); *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007). The record mentions that Plaintiff was treated from kindergarten through twelfth grade for his impairments, but the record is void of any treatment since that time. Tr. 52-53. *See Pyland v. Apfel,* 149 F.3d 873, 877 (8th Cir. 1998) (evidence concerning ailments outside the relevant time period can support or elucidate the severity of a condition, but such evidence cannot serve as the only support for disability). Except for the speech evaluation from Ms. Barrett and the psychological screening from Ms. Baker, both in 2009, the record is void of any medical treatment since 2005.

Additionally, the evidence shows while Plaintiff has not been hired since his termination in February 2009, he has continually sought employment. Tr. 28, 43. *See Melton v. Apfel*, 181 F.3d 939, 942 (8th Cir. 1999) (Plaintiff's continual job search undermines his claim that he was unable to work). Furthermore, despite his impairments, Plaintiff testified that he has continued to engage in social outings including weekly visits to church with his mother, shopping in stores, going to movies monthly, and going to dinner with his friend. Tr. 52-53, 167, 170-171. It was also noted that

---

[2] The ALJ noted that there were no treatment records or assessments in the record to suggest that Plaintiff's impairments have deteriorated. Tr. 15.

Plaintiff played football in high school. Tr. 232. The ALJ noted Plaintiff's testimony indicated that others inaccurately perceive him as suffering with mental retardation, a source of frustration for Plaintiff, and however morally egregious an error, this is not grounds for finding Plaintiff is disabled. Tr. 16.

Finally, the ALJ considered Plaintiff's mother's testimony and concluded that she failed to describe how the limitations show Plaintiff is unable to work, and thus, while she was credible as a witness, her comments to the contrary were unpersuasive. Tr. 16. This determination was within the ALJ's province. *See Siemers v. Shalala*, 47 F.3d 299, 302 (8th Cir. 1995).

Adopting the findings of the state agency consultants, without evidence to the contrary on record, the ALJ properly determined that Plaintiff failed to establish how the severity of his limitations preclude him from work. The ALJ correctly included the severe limitations resulting from Plaintiff's verbal apraxia and reading disorder, adopting the guidance of the state agency to limit Plaintiff's work to avoiding work requiring excellent speech and communication skills. Tr. 220. Without more, the undersigned concludes that substantial evidence supports the ALJ's RFC determination. *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (ALJ bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence).

B.    **Fairly and Fully Developed Record Regarding Mental Impairment:**

Plaintiff contends that the ALJ failed to develop the record, arguing the ALJ failed to address all of the non-exertional limitations and contending more limitations existed. *See* Pl.'s Br. 11-12.

The ALJ has a duty to fully and faily develop the record, even if a claimant is represented by counsel. *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). "It is well-settled that the ALJ's duty to fully and fairly develop the record includes the responsibility of ensuring that the record

11

includes evidence addressing the alleged impairments at issue from either a treating or examining physician." *Neveland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000).  While the Secretary is under no duty to go to inordinate lengths, he must "make an investigation that is not wholly inadequate under the circumstances." *Battles v. Shalala*, 36 F.3d 42, 45 (8thCir. 1994) (quoting *Miranda v. Secretary of Health, Educ. & Welfare*, 414 F.2d 996, 998 (1st Cir. 1975).  There is no bright line test for determining when the Secretary has failed to adequately develop the record; the determination must be made on a case-by-case basis.  *Battles*, 36 F.3d at 45 (quoting *Lashley v. Secretary of Health and Human Serv.*, 708 F.2d 1048, 1052 (6th Cir. 1983).

Here, Plaintiff specifically argues that the psychological implications of his verbal apraxia and reading disorder were never addressed as there was "no mental CE examination" and "DDS performed no mental evaluation with reference to how the articulation and learning disorder may affect his ability to perform work activity."  *See* Pl.'s Br. 15.  However, the regulations make clear that a consultative exam should only be used to "try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision."  *See* 20 C.F.R. §§ 416.912(e), 416.919a(b).  The Eighth Circuit has held an ALJ is required to order a consultative exam only if the evidence of record does not provide an adequate basis for determining the merits of a disability claim.  *Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004).  Further, the ALJ is under no duty to provide continuing medical treatment and supervision for Plaintiff despite the duty to develop the record fully.  *See Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003).

The administrative record in this case creates a sufficient basis on which the ALJ could make an informed decision about Plaintiff's disability claim.  The record contains the following reports and evaluations: 3/6/09 field disability report, 3/12/09 function report, 5/20/09 vocational analysis

12

from DDS, 7/1/09 field disability report, 4/29/09 speech evaluation from Ms. Barrett, 5/20/09 RFC assessment from Dr. Hicks, 7/9/09 request for medical advice, 3/6/09 psychological screening from Ms. Baker and the primary care physician notes from Plaintiff's doctor from 4/24/00 - 2/7/05.  Tr. 139-141, 165-166, 167-174, 175-177, 184-186, 207-210, 211-212, 221-222, 224-2226, 227-258. None of the reports or evaluations substantiated Plaintiff's claim that he is disabled, but rather indicate Plaintiff would be able to perform work so long as the work does not require excellent speech and communication skills, or he is provided accommodation.  Tr. 220, 222, 226.  Further, Plaintiff's counsel never requested a psychological evaluation.  The record shows Plaintiff has had "[s]everal psychological evaluations...[which] indicate that [Plaintiff]'s intellectual ability is significantly better developed than his verbal intellectual ability and falls within the average to high average range." Tr. 224.  Plaintiff's intelligence was tested in 2000 and again in 2003 with both tests indicating "significant deficits in written expression and expressive language." *Id.*

As such, the ALJ had sufficient evidence to rely on in making his mental RFC determination. *See Tellez v. Barnhart*, 403 F.3d 953, 956-57 (8th Cir. 2005) (rejecting argument that ALJ failed to fully and fairly develop the record where there was no indication that the ALJ was unable to make RFC assessment).  Furthermore, Plaintiff has demonstrated no prejudice or injustice as a result of this alleged failure to develop the record.  *See Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993) (unfairness or prejudice is necessary for a reversal due to failure to develop the record).  For these reasons, substantial evidence supports the ALJ's determination regarding Plaintiff's mental limitations, and the ALJ was no required to purchase any additional consultative exam.

**C.     Hypothetical Posed to Vocational Expert:**

Finally, Plaintiff argues the ALJ failed to properly include all of his non-exertional impairments in the hypothetical question posed to Mr. Dale Thomas, the VE.  *See* Pl.'s Br. 16-17. Here, the ALJ properly accounted for Plaintiff's established communication disorder by limiting the RFC to only those positions that do not require excellent communication skills.  *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996) (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

The hypothetical question need only include those impairments and limitations found credible by the ALJ.  *Gragg v. Astrue*, 615 F.3d 932, 940 (8th Cir. 2010) (citing *Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005)).  The hypothetical question need not use specific diagnostic or symptomatic terms where other descriptive terms can adequately define the claimant's impairments.  *Gragg*, 615 F.3d at 940 (citing *Howard v. Massanari,* 255 F.3d 577, 582 (8th Cir. 2001)).  If the ALJ's hypothetical to the VE mirrors the limitations ultimately adopted by the ALJ, it is proper.  *Roe v. Chater*, 29 F.3d 672, 676 (8th Cir. 1996).  The hypothetical need only include impairments that are supported by the record and those that the ALJ accepts as valid.  *See Howe v. Astrue*, 499 F.3d 835, 842 (8th Cir. 2007) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1015 (8th Cir. 2000)).

Plaintiff cites *Newton v. Chater* for the proposition that the ALJ's hypothetical question to the VE was improper when it failed to take into account deficiencies of concentration, persistence or pace in limiting jobs to simple unskilled jobs. *Newton*, 92 F.3d 688, 691, 694-95 (8th Cir. 1996) ("hypothetical described...a borderline range of intelligence, a minimal ability to read and write, an ability to perform only simple tasks...").  However, the Eighth Circuit recently held so long as the

ALJ takes into account "some degree of mental impairment" in the hypothetical posed this is an adequate description. *Hulsey v. Astrue*, 622 F.3d 917, 922-925 (8th Cir.2010) (holding that a hypothetical restricted to unskilled work "where interpersonal contact is superficial" was proper when the plaintiff has a proven history of borderline intelligence, some mental impairment, and the adopted RFC was not incompatible with the impairments described in the ALJ's [] hypothetical").

Plaintiff relies solely on the long-term treating physician RFC, stating, "[w]hen the vocational expert was presented with any of the limitations contained in the long-term physical RFC, there was no work that was available." *See* Pl.'s Br. 17. On May 20, 2009, Dr. David Hicks completed the only RFC on record. Tr. 213-220. In his report, Dr. Hicks made the following findings: (1) primary diagnosis is verbal apraxia; (2) no exertional limitations, postural limitations, manipulative limitations, visual limitations or environmental limitations were established. *Id.* Dr. Hicks only found limited speaking limitations, indicating "[a]voidance of work requiring excellent speech and communication." Tr. 217. Additionally, Dr. Hicks reviewed Dr. Barrett's speech-language pathology report and concluded that the "RFC is limited to avoidance for work requiring excellent speech and communication skills." Tr. 220.

Verbal apraxia is marked by the inability to execute purposeful learned motor acts, despite the physical ability and willingness to do so. *The Merck Manual*, 1395 (16th Ed. 1992). Contrary to intimation, verbal apraxia is not related to any other mental impairment. *See Moubry v. Independent Sch. Dist.,* 9 F.Supp.2d 1086, 1091, 1105 (D. Minn. 1998) (expert opined there is no correlation between apraxia and reading difficulties). The implication that Plaintiff operates at a slower "pace" as suggested by Plaintiff's mother and counsel was not corroborated by the speech-language exam, the psychological exam, nor the RFC assessment. Tr. 34-37, 60, 206. Furthermore,

Plaintiff's intelligence was measured in 2000 under the Weschler Intelligence Scale for Children ("WISC"), and was re-tested in 2003 under the Weschler Intelligence Scale for Adults ("WAIS"); under each test, Plaintiff's scores reflected borderline average intelligence. Tr. 224. Noting this datum in her March 6, 2009 psychological screening exam, Ms. Baker reported "[f]indings indicate average nonverbal intellectual ability with...significant weakness in reading and writing expression...that may interfere with his ability to communicate effectively with others in the workplace..." Tr. 226. Ultimately, however, Ms. Bake concluded that Plaintiff would be able to perform skilled vocational activities if he is properly motivated or accomodated. Tr. 226. Furthermore, the Eighth Circuit has held a Plaintiff's difficulty in "adapting to stressful situations...did not indicate that [his] disorder would impose other limits on [his] ability to work." *Randolph v. Barnhart*, 386 F.3d 835, 840 (8th Cir. 2004) (holding that major depressive disorder appeared to interfere with Plaintiff's concentration, but slightly below average WAIS results do not indicate marked difficulties of concentration). Plaintiff's hypothetical posed to the VE noting he would need additional training time as he was "a little slower in learning things" or has "trouble with co-workers [that causes] some distraction" resulting in being "off-pace ... are simply unsupported by the record. Tr. 59-60. Thus, the record only substantiated Plaintiff's claim that his verbal apraxia limited his ability to work, not that he required accommodation for any mental difficulties in processing what is requested of him.

Here, the ALJ's hypothetical posed to the VE was proper as it mirrored the limitations she ultimately adopted and accurately described Plaintiff's established mental impairment. *Roe,* 92 F.3d 676. The ALJ ultimately adopted an RFC to reflect Plaintiff's verbal apraxia limitations, which were the only impairments established by the record. Tr. 56. *Howe,* 499 F.3d 842. Consequently, when

the ALJ posed the hypothetical to the VE, she asked him to take into account limitations requiring excellent communication skills only. Tr. 56. The available unskilled occupations the VE proposed for Plaintiff do not require excellent communication skills and are available in significant numbers in the regional and national economy[3]. Tr. 17. Thus, the requirements for the positions are not incompatible with the impairments described in the ALJ's hypothetical which were established in the record. *Hulsey*, 622 F.3d 925.

IV.     **Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supports the ALJ's decision and recommends the decision be affirmed and Plaintiff's case be dismissed with prejudice.

DATED this 6th day of June 2012.

/s/ *J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

---

[3] The requirements of (1) production worker (DOT 706.684-042); (2) maid/house cleaner (DOT 302.685-010), and (3) poultry eviscerator (DOT 525.687-074) do not require any communication skills and/or reading requirements. Dictionary of Occupational Titles, http://www.occupationalinfor.org/contents.html (last visited May 25, 2012).

17